UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARLIES A. WESOLOWSKI,

               Plaintiff,

    -v-

POLISH COMMUNITY CENTER
OF BUFFALO, INC., d/b/a LIEUTENANT
COLONEL MATT URBAN HUMAN
SERVICES CENTER OF WESTERN
NEW YORK,

               Defendant.

_____

1:21-CV-751-JLS-MJR

REPORT and RECOMMENDATION

       This case has been referred to the undersigned by the Honorable John L. Sinatra, Jr. to handle all pre-trial matters, including preparation of a report and recommendation on dispositive motions. Before the Court is Defendant's motion to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 9). For the following reasons, it is recommended that Defendant's motion to dismiss be granted in part and denied in part.

## **PROCEDURAL HISTORY**

       Plaintiff Marlies A. Wesolowski ("Plaintiff" of "Wesolowski") filed this action on June 18, 2021, asserting causes of action under the Age Discrimination in Employment Act, codified at 29 U.S.C. § 621, *et seq.*, the Americans with Disability Act of 1990, codified at 42 U.S.C. § 12201, *et seq.*, and the New York Human Rights Law, codified at N.Y. Executive Law § 296, *et seq.* (Dkt. No. 1).

On October 8, 2021, Defendant Polish Community Center of Buffalo, Inc., d/b/a Lieutenant Colonel Matt Urban Human Services Center of Western New York, ("Defendant" or "Matt Urban Center") brought the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiff's complaint fails to state claims for which relief can be granted. (Dkt. No. 9). Plaintiff filed a response in opposition to the motion (Dkt. No. 13), and Defendant filed a reply. (Dkt. No. 17). The Court heard oral argument on the motion to dismiss on December 8, 2021. At that time, the Court considered the matter submitted for report and recommendation.

## RELEVANT FACTS and BACKGROUND

Plaintiff Wesolowski brings this action for employment discrimination against her former employer, Matt Urban Center, a non-profit community and housing services organization. Plaintiff alleges that she was terminated from her employment and subjected to a hostile work environment on the basis of her age, gender, and disability.[1] (Dkt. No. 1). Based upon the following factual allegations, Plaintiff asserts causes of action under Section 102(a) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; Section 4(a) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; and New York State Human Rights Law, Executive Law § 290, *et seq.*

Wesolowski was employed as Executive Director of the Matt Urban Center for approximately 19 years until she was terminated on or about May 29, 2020. (Dkt. No. 1, ¶¶ 7, 14, 31). Wesolowski was sixty-three years old at the time she was terminated. (*Id.*, ¶ 7).

---

[1] The facts in this section are taken from Plaintiff's Complaint and are assumed to be true for purposes of this motion.

- 2 -

During her employment, Wesolowski oversaw growth of the Matt Urban Center budget from approximately one million dollars to more than eight million dollars per year. (*Id.*, ¶ 16). She performed satisfactorily or above satisfactorily and received positive reviews. (*Id.*, ¶ 17).

Wesolowski has a documented disability related to knee injury and surgery. (*Id.*, ¶ 8, 18-20). In November 2017, she sustained a significant injury as a result of falling at one of the Matt Urban Center properties. (*Id.*, ¶ 18). Thereafter, she had several months of treatment, including knee replacement surgery in July 2018. (*Id.*, ¶ 19). Due to subsequent complications from surgery, Wesolowski was considered "100% temporarily disabled" until her return to work in January 2019. (*Id.*, ¶ 20). While Wesolowski was out on medical leave, the comptroller for the Matt Urban Center failed to complete tasks in her absence, which caused significant financial loss to the Center. (*Id.*, ¶ 21).

When Wesolowski returned from medical leave, members of the Board of Directors began to make comments to Wesolowski referencing her age, disability and/or perceived disability. (*Id.*, ¶ 23). In May 2019, the Vice Chair of the Board, Marcia Pacciotti, began making comments to Wesolowski stating how "tired" she felt Wesolowski looked, and began suggesting that she would enjoy retirement. (*Id.*, ¶ 24). Also in May 2019, Pacciotti said to Wesolowski, "you look exhausted, given your health-related issues, have you considered retirement?" (*Id.*, ¶ 25). Later that same month, Pacciotti said to Wesolowski, "there is a lot more rest and less stress in retirement." (*Id.*).

In June 2019, Wesolowski was admitted to the hospital for one week. (*Id.*, ¶ 26). Following her discharge, although she needed to attend multiple doctors' appointments, Wesolowski was still able to perform the essential functions of her position. (*Id.*).

During the summer of 2019, Pacciotti regularly came into the office at the Matt Urban Center headquarters to meet with Wesolowski and the comptroller. (*Id.*, ¶ 27). During many of these encounters, Pacciotti made statements to Wesolowski referencing her age, disability, and/or perceived disability. (*Id.*). Those included comments such as, "there's lots of rest and less stress that comes with retirement," and "don't you think it would be better for your health if you were just retired." (*Id.*). During a September 2019 fundraiser for the agency, Pacciotti stated to Wesolowski, in the presence of other attendees, "just think how great it will be once you retire, you'll have a lot more down time." (*Id.*, ¶ 28). Wesolowski alleges that other comments and instance of pressure were made by agents and directors of the Matt Urban Center in an attempt to force her to retire. (*Id.*, ¶ 29).

During a Board meeting held in the Fall of 2019, Pacciotti brought up the issue of Wesolowski retiring in front of the entire Board. (*Id.*, ¶ 30). Wesolowski assured the Board that she was not interested in retiring. (*Id.*).

On or about May 29, 2020, Wesolowski received a call from Pacciotti and Janice Swinnich, the Vice Chair of the Board, asking if they could have a telephone conference. (*Id.*, ¶ 31). At that conference, Wesolowski was told that they were terminating her employment. (*Id.*). After being informed that she was terminated, Wesolowski was asked by Pacciotti to inform the staff of her exit, and that the best explanation would be that she retired. (*Id.*, ¶ 32). Wesolowski refused to make that statement, as it was never her intention to retire at that time. (*Id.*).

Wesolowski believes that after she was terminated the Matt Urban Center hired a younger, less experience male as Executive Director. (*Id.*, ¶ 34). The current Executive Director is paid approximately 88% more than what Wesolowski was paid. (*Id.*).

## DISCUSSION

I.    *Rule 12(b)(6) Pleading Standard*

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Application of the motion to dismiss standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents

appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

II.    *ADEA Age Discrimination*

Defendant moves to dismiss Plaintiff's claims of age discrimination under the ADEA. (Dkt. No. 9-2, pg. 7-13). Defendant argues that Plaintiff's age discrimination claims fail to state a claim for relief because they do not satisfy the "but-for" causation standard applicable to such claims.[2]

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of age discrimination, a plaintiff must show that (1) she was within the protected age group; (2) she was qualified for the position; (3) she experienced adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. *See Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020).[3] The plaintiff's burden at this stage is *de minimis*. *Timbie v. Eli Lilly & Co.*, 429 Fed. Appx. 20, 22 (2d Cir. 2011). To survive a motion to dismiss, a plaintiff bringing an employment discrimination claim

---

[2] The Court notes that although Plaintiff's complaint alleges a hostile work environment based on her age and disability (Dkt. No. 1, ¶¶ 41-42, 51), Defendant has not separately addressed or moved to dismiss these specific claims or allegations.

[3] The Second Circuit has clarified that ADEA claims should be analyzed under the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 n.3 (2d Cir. 2021). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of age discrimination, as described above. *Id*. Once a *prima facie* case is established, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for the adverse action, which the plaintiff in turn may rebut by showing that "the employer's determination was in fact the result of […] discrimination." *Id*.

under the ADEA must plausibly "allege that age was the but-for cause of the employer's adverse action." *Bernstein v. N.Y. City Dept. of Educ.*, 2022 U.S. App. LEXIS 15147, at *3 (2d Cir. May 31, 2022) (summary order) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86) (2d Cir. 2015)).

Here, Defendant concedes that Plaintiff has adequately alleged facts to satisfy the first three prongs of establishing a *prima facie* case under *Green*. Defendant challenges only the fourth prong: whether Plaintiff has plausibly alleged that her termination "occurred under circumstances giving rise to an inference of discrimination." *Id.*, 952 F.3d at 403. Defendant argues, in particular, that (1) the allegedly "stray remarks" made to Plaintiff are insufficient to support a claim; and (2) any objectionable comments were made too remotely in time to create a link between the discriminatory stereotypes and the adverse action. For the reasons that follow, the Court disagrees.

    a. *Nature of Comments*

Circumstances that may "give rise to an inference of discriminatory motive" include "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," as well as "preferential treatment given to employees outside the protected class." *Murtha v. N.Y. State Gaming Comm's*, 17-CV-10040, 2019 U.S. Dist. LEXIS 159783, at *16 (S.D.N.Y. Sept. 17, 2019) (citations omitted). Courts in this circuit consider four facts in determining whether a remark is probative of discriminatory intent:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

In support of it motion to dismiss, Defendant relies heavily on the Second Circuit decision in *Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293 (2d Cir. 2021). There, the Court explained that "[s]tray age-related remarks are insufficient to raise an inference of discriminatory motive unless they '(1) [were] made repeatedly; (2) drew a direct link between [discriminatory] stereotypes and the adverse employment decision; and (3) were made by supervisors who played a substantial role in the decision to terminate.'" 6 F.4th at 306 (citing *Naumovski v. Norris*, 934 F.3d 200, 216 n.47 (2d Cir. 2019)). To this point, the Second Circuit recently found that three instances of a school principal asking a physical education teacher when he would retire "did not raise an inference of age discrimination because they are legitimate questions an employer could ask an employee." *See Bernstein*, 2022 U.S. App. LEXIS 15147, at *4; *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997) ("The ADEA does not make all discussion of age taboo. Nor does the fact that [a plaintiff's] eligibility for early retirement came up in conversation…support an inference of age played a role [in the alleged adverse employment action]."). Although discussions of retirement may be unrelated to age discrimination, references to retirement may give rise to an inference of discrimination where there are other indicia of improper age-based animus. *See Dressler v. City Sch. Dist. of N.Y.*, 2016 U.S. Dist. LEXIS 107753, at *11-12 (S.D.N.Y. Aug. 15, 2016). The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class. *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 116 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin.*

*Servs.*, 557 U.S. 167 (2009).[4] Where remarks are made by a person who decided to terminate plaintiff and they could reasonably be construed as explaining why that decision was made, they are not appropriately characterized as "stray." *Id.*

Here, the comments in question were more than just stray or isolated remarks and Plaintiff has drawn a direct link between her termination and the pressure to retire based on her age or perceived disability. The statements were made repeatedly; plaintiff alleges at least six specific remarks made by Pacciotti, the Vice Chairperson of the Board of Directors, between Spring and Fall 2019. They included questions about Plaintiff's intent to retire, statements suggesting that Plaintiff should retire, and comments connecting Plaintiff's health with the need to retire. Such unrelenting pressure to retire suggests a causal link between the adverse employment action and Plaintiff's age. *See Harris v. N.Y.C. Human Res. Admin.*, 20-CV-2011, 2022 U.S. Dist. LEXIS 139134, at *24-25 (S.D.N.Y. Aug. 4, 2022) (finding that plaintiff met the "but-for" causation standard for an ADEA claim at the pleading stage based on allegations that, on at least eight occasions, her supervisor stated she should retire, loudly ordered her to retire, and stated she was the oldest employee). Here, at least two remarks were made by Pacciotti to the effect of "you look exhausted, given your health-related issues, have you considered retirement?" These questions draw a connection between Pacciotti's perception of Plaintiff as old, tired, or sick and her repeated pressuring of Plaintiff to retire, which culminated in the Board's decision to terminate her. *See Nakis v. Potter*, 422 F. Supp. 2d 398, 422 (S.D.N.Y. 2006) (supervisor's comment that "your bones are getting old…look I gave you

---

[4] *Tomassi* has been abrogated by *Gross* to the extent that it applied the more lenient mixed-motive standard, rather than the applicable but-for causation standard. *See Tatum v. Univ. of Hartford*, 19-CV-1546, 2021 U.S. Dist. LEXIS 176174, at *25 n.6 (D. Conn. Sept. 16, 2021).

good advice, but you don't listen…you have the age. Why don't you get out?" could be construed as a reference to plaintiff's age or disability). Although the intent and meaning of the alleged comments is nuanced, rarely does a Plaintiff have direct evidence of discrimination, particularly at the pleading stage. *See Mhany Mgmt. v. Cnty. of Nassau*, 819 F.3d 581, 606 (2d Cir. 2016) ("Because discriminatory intent is rarely susceptible to direct proof, a district court facing a question of discriminatory intent must make 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'").

In another instance, Pacciotti urged Plaintiff to retire during a meeting of the Board of Directors. In context, this comment creates an inference that discriminatory stereotypes were part of the Board's decision-making process and that Pacciotti personally played a substantial role in the termination decision. Moreover, both Pacciotti and Swinnich were decision-makers by virtue of being members of the Board of Directors, namely Chairperson and Vice-Chairperson, and they were the two Directors who informed Plaintiff that she was fired.[5]

Further, during the termination conversation, Pacciotti and Swinnich asked Plaintiff to lie to staff by stating she was retiring when she was actually being fired. This allegation is also probative of discriminatory intent. *See Battle v. Carroll*, 11-CV-624, 2014 U.S. Dist. LEXIS 58759, at *12 (W.D.N.Y. Apr. 26, 2014) (rejecting contention that a comment about "you people" was isolated or stray when it was "uttered in the course of the very same conversation in which [plaintiff] was fired and by the very person who fired her."). Although

---

[5] Although not explicitly pled, the Court accepts Plaintiff's argument that the Matt Urban Center's Board of Directors "is tasked with and in charge of hiring and firing office positions such as Plaintiff's." (Dkt. No. 13-1, pg. 11).

one or two remarks alone could be viewed as benign and within a normal discussion of age or retirement plans, the repeated and pointed nature of the alleged comments creates an inference of discriminatory animus or stereotyping.

In *Lively*, the plaintiff accused his employer of a "campaign to purge [the workplace] of elder workers." 6 F.4th at 306. The Court rejected many of his allegations as vague and conclusory. *Id*. The only specific allegations of age-related discrimination were two comments made by Lively's supervisor, Al-Mubaraki, one in which he stated that Lively was "too old and that he would seek to replace Lively…with a younger counterpart," and another in which he told Lively's son that the company needed to replace older employees like his father with younger employees like the son. *Id*. No other indicia of discrimination was alleged, and, in fact, Lively pled that he was promoted and received positive feedback from Al-Mubaraki after Al-Mubaraki made the discriminatory remarks. The Court concluded that Lively's complaint failed to plausibly allege a "but-for" causal connection between allegedly discriminatory remarks and his termination. *Id*., at 306.

Here, Defendant argues that Pacciotti's comments are far less severe than the comments made by Lively's supervisor. However, *Lively* is distinguishable from the case at bar in several important aspects regarding sufficiency of the allegations and the record before the Court. First, Plaintiff alleges at least six specific instances of age-related comments, depicting a pattern of behavior which is absent in *Lively*. Second, the essence of the allegedly discriminatory position on Plaintiff's need to retire was reiterated by Board members at the time they terminated Plaintiff, by urging her to tell staff members that she was retiring, thus strengthening the link between the age-related remarks and the termination. Third, unlike Lively, Plaintiff has adequately alleged that Pacciotti had a

substantial role in the decision to terminate her. Finally, in *Lively,* the Court was addressing a Rule 12(c) motion for judgment on the pleadings which included consideration of undisputed facts and exhibits in Lively's own complaint and defendant's answer. *See* 6 F.4th at 301. Those included allegations that the stated reason for termination of Lively was "violation of company policies and the code of ethics prohibiting sex discrimination and harassment in the workplace." *Id.,* at 307. Here, on a Rule 12(b)(6) motion, the Court does not have an alternate explanation for the adverse action and must draw all inferences in Plaintiff's favor.

   b.  *Temporal Break*

   The Second Circuit has explained that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination […]." *Tomassi*, 478 F.3d at 115. "The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Id*. In *Lively*, the Court found that the plaintiff had failed to raise a reasonable inference that there was a "direct link" between the age-related remarks and his termination because the two comments were separated by several months and occurred between five and ten months before he was terminated. *See* 6 F.4th at 306-07. As the District Court explained in its prior decision, "[t]he gap between [Al-Mubaraki's] alleged comment[s] and the subsequent termination is significant because stray comments are rarely given weight, particularly if they were made temporally remote from the date of the decision." *Id*.

   In this case, discriminatory comments were made by Pacciotti between Spring 2019 and Fall 2019. Plaintiff was not terminated until May 29, 2020, approximately six

months later. The Court agrees with Defendant that this lapse of time stretches the plausibility of a causal connection between the remarks and the eventual termination. However, given that comments were made over at least a six-month period in 2019, a persistent pattern of discriminatory conduct is apparent. *See Sciola v. Quattro Piu, Inc.*, 361 F. Supp. 2d 61, 68 (E.D.N.Y. 2005) (finding several age-related comments and suggestions to retire made over a two-year period prior to termination were not stray remarks and were temporally related to the decision to fire); *Hofmann v. Dist. Council 37, AFSCME*, 99-CV-8636, 2004 U.S. Dist. LEXIS 17375, at *22-28 (S.D.N.Y. Aug. 31, 2004) (holding that repeated remarks about age and retirement made over a four year span were sufficient to give rise to an inference of age discrimination). Further, the fact that Plaintiff was again urged to say she was retiring at the time she was fired can be viewed as a renewal of the discriminatory remarks.

Moreover, in response to this motion to dismiss, Plaintiff has submitted a proposed amended complaint in which she cites the shuttering of non-essential businesses in New York beginning in March 2020 in response to the Covid-19 pandemic. (Dkt. No. 13-2, ¶¶ 34-35). Plaintiff further proposes to allege that her termination occurred shortly after the Matt Urban Center had begun to reopen in the wake of the pandemic. Although the period of Covid-related business shutdowns does not cover the entire time between Fall 2019 and May 2020, these additional allegations explain a portion of the temporal gap and strengthen the plausibility of Plaintiff's claim. As such, it is recommended that Plaintiff be given the opportunity to amend her complaint to add factual allegation regarding the timing and effects of the Covid-19 shutdown as is relevant to her claims.

Defendant argues that although the Second Circuit has not adopted a bright-line test of temporal proximity, a gap of "more than several months" is enough to break the causal link. *See Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86, 104 (2d Cir. 2020). However, Defendant relies solely on decisions addressing Title VII retaliation claims, rather than age or disability discrimination. *See Agosto* (finding alleged acts of retaliation too remote in terms of chronological proximity from the protected activity); *Banks v. GM, LLC*, 14-CV-970, 2020 U.S. Dist. LEXIS 217680, at *51-52 (W.D.N.Y. Nov. 20, 2020) (finding four months between filing of EEOC charges and adverse employment action to be near the "outer limit" of a reasonable causal connection to support a retaliation claim); *Junior v. Erie Cty. Med. Ctr. Corp.*, 18-CV-1014, 2019 U.S. Dist. LEXIS 141339, at *26-27 (W.D.N.Y. Aug. 19, 2019) (dismissing retaliation claim for lack of causal connection where the most closely related conduct occurred two months after plaintiff's protected activity); *Moran v. Wegmans Food Mkts., Inc.*, 65 F. Supp. 3d 327, 332 (W.D.N.Y. 2014) (holding that four-month lapse of time between events was too temporally remote to support an ADA retaliation claim). The relationship between Title VII protected activities and retaliation for those activities is more directly constrained by temporal proximity than the causal connection necessary to show discriminatory conduct. Thus, these cases are inapposite.

The Court acknowledges that the sufficiency of this pleading is a close call. However, for the reasons stated above, and viewing the factual allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has met her *de minimis* burden at this stage. The matter should proceed to at least the second step of the *McDonnell*

*Douglas* framework under which Defendant shall articulate its reasons for terminating Plaintiff.

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss be denied in this regard and that Plaintiff's ADEA claim be permitted to proceed contingent upon amendment of the complaint as detailed above.

III.    *ADA Disability Discrimination*

Defendant moves to dismiss Plaintiff's claims of disability discrimination under the ADA. (Dkt. No. 9-2, pgs.18-21). Defendant argues that Plaintiff has failed to plausibly allege any disability-based comments and because she has not shown a causal link between any alleged comments and Plaintiff's termination.

The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Like ADEA claims, disability discrimination claims under the ADA are analyzed under the *McDonnell Douglas* burden-shifting framework. *Lewis v. Kaleida Health*, 20-CV-1860, 2021 U.S. Dist. LEXIS 118282, at *8 (W.D.N.Y. June 24, 2021). To state a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without accommodation; and (4) she suffered an adverse employment action because of her disability. *Id.,* at *11 (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). The Second Circuit has held that disability claims under the ADA are also subject to the but-for causation standard.

*See Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) ("[…] the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."); *Bourara v. N.Y. Hotel Trades Council & Hotel Ass'n of N.Y. City, Inc. Employee Ben. Funds*, 2021 U.S. App. LEXIS 31269, at *3 (2d Cir. Oct. 19, 2021).

Here, Defendant does not dispute that Plaintiff has adequately alleged facts sufficient to satisfy her burden regarding the first three elements of *prima facie* claim of disability discrimination. Defendant challenges that Plaintiff has plausibly alleged that her termination was motivated by her disability.

As discussed above, the Court finds that the comments made by Pacciotti and others were more than "stray" remarks and that they can reasonably be construed as referencing either or both Plaintiff's age and her disability or perceived disability. These include repeated comments about Plaintiff's "health issues," remarks about Plaintiff looking tired or needing rest, and the suggestion that retirement would be better for Plaintiff's health. Indeed, it is difficult to discern the exact intent behind each alleged statement, but Plaintiff has met her burden at this stage to create an inference of discrimination on the basis of age and disability. For the reasons explained above, the Court agrees that the temporal link between these statements and the adverse action is stretched thinly. However, Plaintiff's proposed amendment of her complaint to include allegations regarding the pandemic-related business shutdown tightens the connection between the two events.

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss be denied in this regard and that Plaintiff's ADA claim be permitted to proceed contingent upon amendment of the complaint as detailed above.

IV.    _NYSHRL Claims_

Defendant moves to dismiss Plaintiff's claim of gender discrimination under the NYSHRL. (Dkt. No. 9-2, pgs. 22-23). Defendant also moves to dismiss Plaintiff's age and disability discrimination claims under the NYSHRL. (_Id._, pgs. 12-21).

The NYSHRL "prohibits employers from 'discriminating against [an] individual in compensation or in terms, conditions or privileges of employment.'" _Tolbert v. Smith_, 790 F.3d 427, 436 (2d Cir. 2015) (quoting N.Y. Exec. Law § 296(1)(a)). Until recently, the law governing federal discrimination claims such as Title VII, the ADEA, and the ADA was identical to that governing NYSHRL § 296 discrimination claims. _See generally Leiner v. Fresenius Kabi USA, LLC_, 14-CV-979, 2019 U.S. Dist. LEXIS 190200, at *16 n.7 (W.D.N.Y. Nov. 1, 2019) (citing _Gorzynski v. JetBlue Airways Corp._, 596 F.3d 93, 105 n.6 (2d Cir. 2010)); _Cruz v. Coach Stores, Inc._, 202 F.3d 560, 565 n.1 (2d Cir. 2000).[6] However, "[t]he NYSHRL was amended on August 19, 2019 to provide that its provisions should be construed liberally 'regardless of whether federal civil rights law, including those laws with provisions worded comparably to the provisions of this article, have been so construed.'" _Summit v. Equinox Holdings, Inc._, 20-CV-4905, 2022 U.S. Dist. LEXIS

---

[6] _See also Ragin v. Riverbay Corp._, 2021 U.S. App. LEXIS 26824, at *9 n.2 (2d Cir. Sept. 7, 2021) (summary order) (reviewing state law claims co-extensively with federal claims because "the scope of the disability discrimination provisions of [the NYSHRL] are similar to those of the [ADA]," while also noting that "[w]e have not yet determined whether 'but for' causation is the proper standard for claims of disability discrimination under the NYSHRL or whether, for instance, Title VII's lower 'mixed-motive' test would apply instead, and we decline to do so today.").

129890, at *48-49 (S.D.N.Y. July 21, 2022) (quoting *Deveaux v. Skechers USA, Inc.*, 19-CV-9734, 2020 U.S. Dist. LEXIS 63356, at *3 n.3 (S.D.N.Y. Apr. 9, 2020); N.Y. Exec. Law § 300). In other words, the NYSHRL was amended to "render the standard for claims closer to the standard under the NYCHRL [New York City Human Rights Law]." *Id.; see also* S*yeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 337 (S.D.N.Y. 2021). *See generally Williams v. N.Y.C. Transit Auth.*, 171 A.D.3d 990, 992-93 (N.Y. App. Div. 2019) ("[W]here an adverse employment action is shown to be 'motivated by [unlawful] animus, even in part, the defendant may be held liable' under the NYCHRL."); *Syeed*, 568 F. Supp. 3d at 337 (explaining that under the NYCHRL, a plaintiff must allege that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for her unequal treatment).

Neither party addressed this recent change in applicable law in their submission to the Court. The parties each treated Plaintiff's NYSHRL age and disability claims as analytically identical to her federal claims. Nonetheless, based on the Court's recommendation that Plaintiff's claims meet the stricter but-for causation standard applicable to federal age and disability discrimination claims, her corresponding NYSHRL claims should also survive.

Defendant addressed Plaintiff's state law gender discrimination claim (for which she makes no corresponding claim under federal statute) with the standard applicable under Title VII. Indeed, "[p]rior to August 19, 2019, the pleading standards were generally the same for Title VII, section 1981, and NYSHRL claims." *Syeed*, 568 F. Supp. 3d at 343. The Second Circuit recently found that, with certain exceptions, claims brought under the NYSHRL are analytically identical to claims raised under Title VII and must meet only

the less rigorous "motivating factor" standard, rather than the "but-for" causation standard. *See Milord-Francois v. New York State Office of the Medicaid Inspector Gen.*, 2022 U.S. App. Lexis 4316, at 8, 8 n.3 (2d Cir. Feb. 17, 2022) (summary order). "[T]o defeat a motion to dismiss in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Sayers v. Niagara Falls City Sch. Dist.*, 2021 U.S. Dist. LEXIS 164357, at *6 (W.D.N.Y. Aug. 30, 2021) (quoting *Vega*, 801 F.3d at 87).

Here, Plaintiff's complaint lacks any plausible allegations that her gender was a motivating factor in her termination or any other adverse employment decision. The only reference to gender in her complaint is a single allegation that Defendant "hired a younger less experienced male as an Executive Director after it terminated Plaintiff." Defendant's decision to hire a male employee after Plaintiff's termination does not create an inference of gender-based discrimination or that gender was a motivating factor in the employment decision. Further, Plaintiff does not allege any instances of comments, stereotyping, or other indications of animus based on her gender. Plaintiff's reliance on *Bivens v. Institute for Community Living, Inc.*, 14-CV-7173, 2015 U.S. Dist. LEXIS 51000 (S.D.N.Y. Apr. 17, 2015) to support this claim is unpersuasive. There, the Court found a plausible claim of gender discrimination based on detailed allegations of gender-based comments, disparities in treatment, and the suspicious timing of a termination decision. *Id.*, at *21-24. None of those circumstances are alleged here.[7]

---

[7] Even reviewing Plaintiff's gender discrimination claim based on the more lenient and broadly construed standards applicable to claims under NYCHRL, Plaintiff's claims of gender discrimination fail. "To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss Plaintiff's NYSHRL gender discrimination claim be granted and Defendant's motion to dismiss Plaintiff's NYSHRL age and disability discrimination claims be denied.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss (Dkt. No. 9) be granted in part and denied in part. More specifically, Plaintiff's age and disability discrimination claims should survive, and Plaintiff's gender discrimination claim should be dismissed.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

---

gender.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)). Plaintiff has made no plausible allegations of unfavorable treatment based on her gender.

Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

SO ORDERED.

Dated:        August 12, 2022
              Buffalo, New York

                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge